# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSO+URI
# EASTERN DIVISION

| | |
|---|---|
| KENNETH ADAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:21-CV-953 NAB |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Kenneth Adams' appeal regarding the denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 10.) The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court will reverse the Commissioner's decision and remand for further proceedings.

**I.      Background**

On May 14, 2018, Adams applied for DIB and SSI, alleging that he had been unable to work due to disability since July 15, 2017. (Tr. 266-79.) Adams alleged disability due to a stroke, knee pain, back pain, and poor balance. (Tr. 310.) His application was initially denied and he filed a Request for Hearing by Administrative Law Judge (ALJ). (Tr. 123, 140.) On August 19, 2020,

the ALJ held a hearing on Adams' claim. (Tr. 89-111.) Adams was represented by counsel at the hearing, and an impartial vocational expert testified. *Id.*

In a decision issued on September 9, 2020, the ALJ found Adams was not disabled as defined in the Act from the alleged onset date through the date of the decision. (Tr. 23-46.) Adams filed a Request for Review of Hearing Decision with the Social Security Administration's (SSA) Appeals Council. (Tr. 263-265.) On June 1, 2021, the Appeals Council denied Adams' request for review, and adopted the ALJ's decision in full. (Tr. 12-14.)

**II.     Standard for Determining Disability Under the Act**

The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must

establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

### III. The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ here found that Adams met the insured status requirements of the Social Security Act through June 30, 2019, and that he had not engaged in substantial gainful activity since July 15, 2017, the alleged onset date. (Tr. 28.) Next, the ALJ found that Adams has the following severe impairments: lumbar and cervical degenerative disc disease, bilateral knee degenerative joint disease, chronic obstructive pulmonary disease (COPD), and obesity. (Tr. 28.) The ALJ found that Adams' major depressive disorder and generalized anxiety disorder are not severe medical impairments. (Tr. 29.)

The ALJ determined that Adams did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. The ALJ also determined that Adams had the residual functional capacity to perform light work with additional limitations. Specifically, the ALJ found that

> He can lift or carry 20 pounds occasionally and ten pounds frequently; can stand or walk for six hours during an eight-hour workday; can sit for six hours during the

3

eight-hour workday; can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, crouch, or crawl; can frequently reach and handle; should avoid work environments of concentrated smoke, fumes, dust, or gases; and would need to avoid workplace hazards, such as unprotected heights and dangerous machinery.

(Tr. 31.) The ALJ found that Adams was unable to perform any past relevant work. (Tr. 38.) Adams was 48 years old on the alleged disability onset date and considered a younger individual age 18-49, and he has a limited education. The ALJ determined that the transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. (Tr. 38.) Based on the foregoing, the ALJ found that there are jobs that exist in significant numbers in the national economy that Adams can perform, including cashier (Dictionary of Occupational Titles (DOT) No. 211.462-010, light exertion level, approximately 575,000 jobs in the national economy), furniture rental clerk (DOT No. 295.357-018, light exertion level, approximately 58,289 jobs in the national economy), and counter attendant (DOT No. 311.477-014, light exertion level, approximately 24,438 jobs in the national economy). (Tr. 39.) Therefore, the ALJ concluded that Adams was not disabled, as defined in the Act, from May 7, 2018 through September 9, 2020. (Tr. 40.)

### IV. Standard for Judicial Review

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court must affirm the Commissioner's decision if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether

4

it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942. *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the Court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

**V.    Discussion**

Adams challenges the ALJ's decision, asserting that the ALJ failed to properly evaluate the opinion evidence. Specifically, Adams argues that the ALJ improperly relied on findings of a non-examining consulting physician, Dr. Mace, who evaluated the record early on in his claim. Adams further argues that the ALJ's finding that the treating physician Dr. Jackson's opinion was unpersuasive is not supported by substantial evidence. Defendant responds that the ALJ properly

5

evaluated the opinion evidence in a manner consistent with the SSA's regulations and policies, and included all supported limitations in the RFC, and substantial evidence supports the ALJ's determination.

The Court's discussion will focus on the opinion evidence arguments raised by the parties. Under the applicable regulations, the ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, the ALJ should consider various factors, with special emphasis placed on an opinion's supportability and consistency with the entire medical record. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). *See Williams v. Saul*, No. 2:19-CV-88 RLW, 2021 WL 1222770, at *11 (E.D. Mo. Mar. 31, 2021) ("Under the new regulations, supportability and consistency are the most important factors to consider when determining the persuasiveness of a medical source's medical opinions, and therefore, an ALJ must explain how he considered the factors of supportability and consistency in his decision."). The RFC must ultimately be supported by "some medical evidence," but every finding of the RFC need not be supported by a specific medical opinion. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citations omitted). "Even though the [RFC] assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

Here, the ALJ found Dr. Mace's administrative findings to be generally persuasive. (Tr. 36.) Dr. Mace, a non-examining, state agency physician, found Adams to be capable of performing a range of work at the light exertional level, with additional postural and environmental limitations. (Tr. 119-120.) Dr. Mace reviewed some of Adams' medical records and rendered her opinion on September 12, 2018. The ALJ found that Dr. Mace "based their findings upon comprehensive

reviews of the record, including the claimant's longitudinal medical history and self-reported daily activities. Their findings are consistent with the same" and "[a]re accompanied by detailed narratives that explain what evidence the consultants relied upon when rendering their conclusions." The ALJ did not adopt Dr. Mace's exact RFC, instead providing additional postural, manipulative, and environmental limitations in his RFC determination to give some limited credence to Adams' subjective allegations. (Tr. 36.) In support of his findings regarding the persuasiveness of Dr. Mace's opinion, the ALJ further explained:

> Although some evidence has been added to the record since the State agency consultants' reviews thereof, that evidence is cumulative of what was already present in the case record. That is, the additional evidence does not document an appreciable worsening in the claimant's condition since the State agency consultants' findings were rendered.

(Tr. 36.) The undersigned disagrees. In evaluating Adams' RFC, Dr. Mace had only three medical encounters available for review: a June 26, 2017 trip to the emergency department for a UTI (Tr. 419-424), a July 21, 2018 consultative exam (Tr. 425), and August 23, 2018 x-rays of the chest, knees, and lumbar spine revealing mild degenerative changes in the knees and lumbar spine (Tr. 447-450). The medical records reflect that Adams did not start more continuous treatment for his impairments until August 2019, and the more recent records cannot be described as merely cumulative of the records available to Dr. Mace. In the "Additional Explanation" to support her RFC determination, Dr. Mace explains that "clmnts current tx for additional impairments includes OTC medication. Additional testing would not further reduce the RFC. The clmnt has not had follow up care or ongoing treatment for his conditions during the relevant time period." (Tr. 121.) However, August 28, 2019 imaging that Dr. Mace could not have reviewed in 2018 revealed moderate osteoarthritis in Adams' right knee (Tr. 614) and mild diffuse degenerative disc disease (Tr. 646). A November 6, 2019 lumbar spine MRI revealed mild to moderate degenerative changes

7

in the lumbar region. (Tr. 460, 486.) Additionally, Adams' November 6, 2019 cervical spine MRI and March 3, 2020 show moderate to severe spinal canal stenosis. (Tr. 462, 743.)

The imaging conducted in 2019 and 2020 and corresponding treatment was not "cumulative" of the records before Dr. Mace. Therefore, the Court agrees with Plaintiff that the outdated nature of Dr. Mace's opinion reduces its probative value as support for the RFC. *See Noerper v. Saul*, 964 F.3d 738, 747 (8th Cir. 2020) (reversing the district court's affirmance of the Commissioner's decision where "the closest the record comes to supporting the 6-hour determination is the report of [a consulting physician that] predated the majority of the treatment record concerning Noeper's knee conditions"); *McCoy v. Astrue,* 648 F.3d 605, 616 (8th Cir. 2011) (opinion of non-examining medical consultant afforded less weight when consultant did not have access to relevant medical records, including records made after date of assessment); *Williams v. Saul*, No. 2:19-CV-88 RLW, 2021 WL 1222770, at *15 (E.D. Mo. Mar. 31, 2021) (discounting consulting physician's opinion based in part on "the fact that it was based on the relatively early date at which he reviewed Plaintiff's file"). The discrepancy between the actual evidence of record and the ALJ's finding that the evidence as a whole is cumulative of what was present at the time of Dr. Mace's evaluation further undermines the ALJ's ultimate conclusion of non-disability.

Adams next takes issue with the ALJ's finding that treating physician Dr. Jackson's medical opinion is unpersuasive. (Tr. 36.) Dr. Jackson opined that Adams cannot sit more than 15 minutes at one time, can only sit for less than 2 hours in an 8-hour workday, cannot stand more than 20 minutes at one time, and can only stand for less than 2 hours in an 8-hour workday. (Tr. 494.) He opined Adams can never twist, stoop, balance, crouch, crawl, or climb, and can rarely reach, handle, finger, or feel. (Tr. 494.) He checked boxes to indicate that Adams would be off

8

task for 25% of the workday, is incapable of even "low stress" work, and would have to miss more than 4 days of work per month. (Tr. 495.)

First, the ALJ found this opinion to be unsupported. When asked in the medical source statement form to identify clinical findings and objective signs, Dr. Jackson wrote Adams has tenderness in neck, weakness in hands bilaterally, shortness of breath while sitting, and a November 6, 2019 cervical spine MRI showing multilevel spinal stenosis. (Tr. 493.) The ALJ stated a majority of these medical signs upon which Dr. Jackson based his opinion were absent from a majority of his examinations of the claimant, thus there was no logical nexus between the clinical findings observed by the treatment provider and his opinion. (Tr. 37.) Additionally, he noted Dr. Jackson did not recommend treatment reasonably supportive of the opinions in the medical source statement. He states that Dr. Jackson merely prescribed the use of diclofenac and smoking cessation. (Tr. 37.) Second, the ALJ found the opinion unpersuasive because the opinion is not consistent with the broader record. The ALJ determined that Adams did not present with persistent, clinical abnormalities reasonably consistent with the limitations identified by Dr. Jackson.

After a careful review of the evidence, the undersigned finds that the ALJ properly explained that Dr. Jackson's determinations are not fully consistent with or supported by Adams' larger medical record. For example, Dr. Jackson cited shortness of breath while sitting as a "clinical finding" or "objective sign" to support the limitations given. However, in the only visit Dr. Jackson had with Adams before filling out a medical source statement,[1] although Adams subjectively reported shortness of breath as a chronic problem that occurs constantly, on exam, Dr. Jackson

---

[1] After the November 1, 2019 clinic visit, Adams' next and last clinic visit of record with Dr. Jackson was on March 6, 2020. (Tr. 838.) However, the records reflect that Dr. Jackson was the hospital attending the day that Dr. Jackson presented at Missouri Baptist Hospital with a foreign object in his eye and received an eye x-ray in addition to the November 6, 2019 imaging discussed above. (Tr. 573.)

9

noted that his pulmonary effort is normal, he was in no respiratory distress, and he had normal breath sounds, and he cataloged Adams' shortness of breath as a non-chronic problem. (Tr. 542-543, 559.) Additionally, throughout the record as a whole, Adams received conservative treatment. Adams' alleged onset date appears to coincide with what he reports to providers as a "stroke" that occurred in 2017. (Tr. 425.) However, the only medical evidence in the record from 2017 is his emergency room visit where he presents with signs of *heat stroke,* and was ultimately diagnosed with a urinary tract infections and discharged the same day with a prescription for antibiotics. (Tr. 424.) Further, there is nothing in the medical records to indicate that Adams suffered a disability as a result of his 2017 heat stroke symptoms. In 2018, Adams appeared for a physical consultative exam in July 2018 and obtained chest, knee, and spine imaging with mild and/or unremarkable findings. The record reflects no assessment or treatment sought or rendered until a year later in August 2018, when Adams received follow up scans. Adams did not have treatment until a December 31, 2018 appointment where he presented to the South Central Missouri Community Health Center with back and knee pain. Adams reported he had been in pain for ten years and had x-rays and an MRI through disability with no diagnosis, and that he only takes ibuprofen for the pain with no relief. The provider discussed the need for an orthopedic evaluation for the possibility of pain injections, surgical intervention, rehab, or a disability determination. (Tr. 455-456.) Adams received a referral to orthopedics, but there is no record of follow up or additional treatment until he presented at the emergency room with back and knee pain on August 28, 2019. (Tr. 661.) Following his emergency room visit and the August 2019 imaging reflecting mild degenerative changes in the lumbar spine and moderate osteoarthritis in his right knee, Adams began more consistently seeking treatment. Providers treated his pain with over the counter and prescription pain medications, including baclofen, amitriptyline, gabapentin, and diclofenac. Adams testified

that he has never had a pain injection, and the doctors "won't do the physical therapy because they said it's just out of the question because it just aggravates it." (Tr. 101.) However, multiple providers discussed physical therapy with Adams, and Dr. Jackson referred Adams to physical therapy, but Adams did not show up to the appointment. (Tr. 555, 560.) He uses a crutch, but he concedes that it was not prescribed by a doctor. (Tr. 103-104, 340.) Dr. Jackson's treatment notes and the record as a whole do not reflect the degree of limitation that Dr. Jackson indicated in his medical source statement. The ALJ's decision to find Dr. Jackson's opinion unpersuasive is supported by substantial evidence on the record as a whole.

      The Court acknowledges that the record contains conflicting evidence, and the Court's task is not to reweigh the evidence presented to the ALJ. Despite Adams' limited treatment for the seventeen months following his alleged onset date, the inconsistencies in his subjective complaints, mixed medical exams, and the conservative treatment sought thus far, there is objective imaging reflecting a worsening of his condition and most recently a recommendation for cervical spine surgery. There is substantial evidence to support the ALJ's evaluation of Dr. Jackson's opinion and of the claimant's subjective complaints. Ultimately, the ALJ states that he considered all of the evidence and found Adams remains capable of light work with additional limitations because "the cumulative medical and non-medical evidence" does not reasonably support a finding of greater additional limitations. (Tr. 37.) However, the only medical opinion evidence relied on by the ALJ in making a determination on Adams' ability to sit, stand, walk, lift, carry or perform other work-related activity on a sustained basis was based on the RFC findings of a consulting physician who did not see the majority of the medical evidence. In addition, the ALJ incorrectly characterizes the current record as "cumulative" of what was available to the consulting physician in September 2018. Thus, the undersigned finds that the ALJ's assessment of

Adams' physical ability to function in the workplace is not supported by substantial evidence. The Court therefore remands the case for further consideration.

Upon reconsideration of appropriate evidence, the ALJ may well determine that Plaintiff is not disabled. The Court is aware that upon remand, the ALJ's decision as to non-disability may not change after properly considering all evidence of record and undergoing the required analysis, but the determination is one the Commissioner must make in the first instance. *See Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (when a claimant appeals from the Commissioner's denial of benefits and the denial is improper, out of an abundant deference to the ALJ, the Court remands the case for further administrative proceedings); *Leeper v. Colvin*, No. 4:13-CV-367 ACL, 2014 WL 4713280 at *11 (E.D. Mo. Sept. 22, 2014) (ALJ duty to make disability determination).

### VI. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **GRANTED** in part and **DENIED** in part. (Docs. 1, 16.)

**IT IS FURTHER ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings.

**IT IS FURTHER ORDERED** that a Judgment of Reversal and Remand will be filed contemporaneously with this Memorandum and Order remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. § 405(g), sentence 4.

/s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of September, 2022.